IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| AMALIA BENVENUTTI, )<br>Individually and on behalf of )<br>similarly situated employees, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>GEICO GENERAL INSURANCE )<br>COMPANY, D/B/A GEICO, )<br>)<br>Defendant. ) | CASE No.:<br><br>COLLECTIVE ACTION<br><br>JURY TRIAL DEMANDED |

## COLLECTIVE ACTION COMPLAINT

Plaintiff, AMALIA BENVENUTTI, individually and on behalf of all similarly situated employees, brings this action against the Defendant GEICO General Insurance Company Inc. d/b/a GEICO ("GEICO" or "Defendant") seeking to recover for Defendant's violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et. seq., ("FLSA"). Plaintiff avers the following:

## INTRODUCTION

1. Plaintiff is a former customer service representative of the Defendant at its Macon Georgia call center. The Plaintiff brings this suit as collective action pursuant to 29 U.S.C. § 216 of the FLSA. Plaintiff seeks to notify all other similarly

situated customer service claims representatives and provide them with the opportunity to join this suit against the Defendant.

2. Plaintiff avers, among other things, that the Defendant does not pay her and other customer service claims representatives for all hours worked and engages in practices that require them to underreport hours worked. These practices result in the Defendant not paying Plaintiff and similarly situated customer service claims representatives time and one-half for all hours worked over forty (40) hours during a work-week in violation of 29 U.S.C. § 207.

## JURISDICTION

3. This court has subject matter under 29 U.S.C. § 216 of the FLSA and federal question jurisdiction under 28 U.S.C. § 1331.

4. The Plaintiff has executed an authorization to file suit. (See Attachment A).

## PARTIES

5. Ms. Benvenutti is an employee of the Defendant. She resides in Macon, Georgia and worked at the Defendant's call center located in Macon, Georgia.

6. The Defendant GEICO is a Maryland corporation with a principal place of business in Maryland. The Defendant regularly conducts business in the state of Georgia.

7. The Defendant is an "employer" within the meaning of the FLSA.

## FACTUAL ALLEGATIONS

8. The Defendant GEICO is an insurance company that provides vehicle, property and business insurance to customers located in all fifty states, including Georgia.

9. The Defendant employs the Plaintiff as a customer service representative ("CSR") at its Macon, Georgia call center (hereinafter "Macon Call Center"). She was assigned to handle customer claims. As used herein, the term "CSR" refers to any hourly phone representative who handles calls from customers regarding matters related to claims and/or policy service such as questions regarding coverage, premiums etc.

10. The Defendant pays the Plaintiff and customer service representatives on an hourly basis. The Defendant classifies the Plaintiff as a non-exempt employee for purposes of the FLSA.

11. Plaintiff's job as a customer service representative required her to answer customer calls and provide assistance with a claim. This includes, among other things, opening a claim file for a customer who has called to report an incident, providing information to the customer regarding coverage, communicating the status of a claim and generally addressing questions a customer may have about a claim or a policy.

12. The Defendant employs hundreds of other persons as CSRs at the Macon Call Center. The Defendant assigns some of the CSRs to handle claims while other CSRs are assigned to assist customers with changes to their coverage or premiums.

13. All CSRs assigned to the Macon Call Center are scheduled for 8 hours and 15 minutes. CSR's are instructed to enter 7.75 hours per day for each schedule work day at the beginning of their work-week. The difference represents a thirty (30) minute unpaid meal period. CSRs enter their time electronically in a time keeping system and any deviation from the 7.75 hours must be approved by a supervisor.

14. All CSRs assigned to the Macon Call Center use a Cisco software application named "Finesse" to answer customer calls and record information obtain from the customer regarding a claim or a policy. The Defendant pays CSRs on the basis of the number of hours logged onto Finesse. If a CSR is logged onto Finesse in a "not ready" state for longer thirty (30) seconds they are put a watch list and subject to discipline.

15. All CSRs assigned to the Macon Call Center are given a quota on the number of calls they must handle during the 7.75 hours per day. Failure to meet the quota during the 7.75 hours may result in discipline for poor work performance.

16.    The Defendant requires that all CSRs assigned to the Macon Call Center be ready to take calls at the start of their shift.  However, to be ready to take calls the CSR must first load programs/applications needed for answering calls, read and respond to emails from management and then load and sign onto Finesse. The CSR then hits the green "ready" button in order for the system to send them calls. The routine of loading programs before logging on to Finesse takes approximately ten (10) to fifteen (15) minutes each day if not more. If an employee is not able to read/respond to emails prior to the start of the shift, the employee will typically respond to emails during a meal break or at the end of a shift. Likewise, CSRs complete tasks once they log off Finesse and hit the red button to end their shift. This includes closing out of programs, reading/responding to emails, updating information and/or completing documentation.  These additional work tasks take at a minimum of five (5) minutes per shift.

17.    The Defendant only compensates CSRs for hours during which the CSR is logged onto Finesse <u>and</u> taking calls (i.e., on ready status). Defendant did and does not compensate Plaintiff and other CSRs assigned to the Macon Call center for the additional work related tasks such as, but not limited to, reading/responding to emails, communicating with supervisors, loading applications needed to perform duties, logging on and off of Finesse, shutting down applications after ending their shift on Finesse, updating information and/or documenting tasks performed during

the shift. The Plaintiff was told on more than one occasion by her supervisor that GEICO only pays you while you on Finesse ready to take calls.

18.     Additionally, the Defendant has a policy that if CSRs experienced technical problems logging onto Finesse or technical problems while logged onto Finesse that required them to close the application and seek assistance from the IT department, they are not paid during the downtime. Instead, the CSR is required to work past his or her quit time (i.e. the end of their shift) to make up for the downtime, have the downtime deducted from paid leave or treated as unexcused unpaid leave.

19.     During each work-week in the relevant period (i.e. three years from the date of filing), the Plaintiff experienced downtime of approximately two (2) to four (4) hours per week as a result of technical problems with Finesse. The downtime occurred during the Plaintiff's scheduled hours. The Plaintiff would contact Defendant's IT department to have the problem fixed.  During this downtime, the Plaintiff was not able to take calls and was required to make up the downtime "off the clock." Plaintiff would either work during her unpaid lunch period or work past the end of her shift.  The Defendant did not compensate Plaintiff for the hours worked to makeup downtime.

20.     Plaintiff's supervisor was aware that Plaintiff was working "off the clock" to make-up for the downtime and in fact expressly instructed her to do so in accordance with Defendant's policy.

21. During the periods of downtime resulting from software problems with Finesse, the Plaintiff remained in her work area, at her computer and/or on the phone waiting for the IT department to correct the problem. The downtime she regularly experienced was not duty free downtime. Plaintiff had to log on and start taking calls immediately after she received notification from the IT department that the problem had been corrected.

22. The Defendant has a work rule requiring CSRs to complete a call regardless of when the call taken. As a result of this work rule, the Plaintiff and similarly situated CSRs frequently worked past their scheduled stop time. Because the Plaintiff had already entered 7.75 hours for the work-day as instructed, the Defendant routinely did not pay Plaintiff for hours worked past her schedule 8.15 hours.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

23. The Plaintiff brings Count I as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all similarly situated employees.

24. For purposes of this proposed collective action, "similarly situated employees" means all customer service representatives ("CSRs") assigned to work out of the Macon Call Center and who worked at any time as a CSR within the three (3) year period prior to joining this lawsuit and who were not paid time and half for all hours worked over forty (40) hours during a workweek.

25. All non-exempt CSRs employed at the Macon Call Center work under the same terms and conditions of employment, are subject to the same work rules and policies regarding time entry and are under common supervision.

26. Accordingly, certifying Count I below as a collective action will provide the most efficient means for adjudicating the Plaintiff and similarly situated CSRs' claims under 29 U.S.C. § 207(a)(2) for unpaid compensation.

27. The Plaintiff requests that the Court authorize her to serve as a representative of a proposed collective action, that the Court conditional certify the case as a collective action and that the Court authorize the Plaintiff through counsel to send a notice to all similarly situated CSRs informing them of their right to join this action.

## COUNT I

**(Unpaid Compensation)**

28. Pursuant to 29 U.S.C. § 207(a)(2), the Defendant is required to pay non-exempt employees such as the Plaintiff and similarly situated CSRs at the rate of one and half times their regular hourly rate for all hours worked over forty (40) hours in a work-week.

29. The Defendant did not pay the Plaintiff and similarly situated CSRs for all hours worked during a work-week. As noted above, the Defendant did not pay the Plaintiff and similarly situated CSRs for, among other things, time loading the

applications needed to answer calls, reading/responding to emails, signing onto Finesse and/or for time spent waiting for Finesse to load calls. These tasks take at least ten (10) to fifteen (15) minutes each work-day.

30. The Defendant did not pay the Plaintiff and similarly situated CSRs for time spent "signing off" (i.e. closing applications etc.), reading/responding to emails, updating information, and/or documenting information after the they have taken the last call on Finesse and are no longer logged on to take calls. These tasks take a minimum of five (5) minutes to perform.

31. Additionally, the Defendant did not pay the Plaintiff and similarly situated CSRs for downtime resulting from technical problems with Finesse. The Plaintiff and similarly situated CSRs experienced at a minimum approximately two (2) to four (4) hours of downtime per workweek. The Defendant required the Plaintiff and similarly situated CSRs to make up the downtime without receiving additional compensation for such hours worked.

32. Adding the "off the clock" work performed each day results in the Plaintiff and similarly situated CSRs working more than forty (40) hours per week. Because the Defendant did not compensate the Plaintiff and similarly situated CSRs for all the additional work at the start and end of a shift, the Defendant failed to properly pay Plaintiffs and similarly situated CSRs the overtime premium required for all hours worked over forty (40) during a workweek.

33. Adding the work performed to make-up for downtime and the time spent on additional work related tasks (as described above in paragraphs 29 and 30) to a CSRs hours worked during a work-week results in the CSR routinely working at minimum forty-two (42) to forty-four (44) hours per week.  The Defendant only paid the Plaintiff and similarly situated CSRs for thirty-eight and three quarters of an hour (38.75) per week.  Because the Defendant did not pay the Plaintiff and CSRs for all hours worked during a workweek, the Defendant failed to pay the Plaintiff and similarly situated CSRs the overtime premium for all hours worked over (40) during a workweek as required under 29 U.S.C. § 207.

33. The Defendant had actual knowledge of the policies and practices resulting in the failure to pay the Plaintiff and similarly situated CSRs for all hours worked and any overtime premium owed for hours worked over forty (40) hours during a workweek.  The Defendant willfully failed to pay Plaintiff and similarly situated CSRs the overtime premium required under 29 U.S.C. § 207.

34. Wherefore, the Plaintiff individually and on behalf of similarly situated CSRs requests that the Court order the Defendant to (a) pay Plaintiff and similarly situated CSRs unlawfully withheld wages, (b) liquidated damages in an equal amount, (c) reasonable attorneys' fees and costs, (d) prejudgment interest and (e) all other legal and equitable relief the Court deems appropriate to remedy Defendant's violations of the FLSA.

## COUNT II

### (Retaliation)

35. On or about March 24, 2022, the Plaintiff was informed that she was required to make up any downtime resulting from IT issues at the end of her shift.

36. Plaintiff complained that the policy of requiring CSRs to make up downtime without pay was unlawful because the employee was not responsible for the downtime. Plaintiff's manager told her that the policy would apply to her unless the downtime resulted from companywide system related issue.

37. Dissatisfied with her manager's response, the Plaintiff escalated her complaint to human resources. When her manager learned that Plaintiff had complained to human resources, she retaliated against the Plaintiff by denying her FMLA approval for a prior absence. Her manager also issued her a warning that she was not handling calls in a timely manner.

38. When Plaintiff complained to upper management about her manager's retaliation and the unlawful requirement that she work off the clock to make up downtime, her supervisor confronted her in an angry and aggressive manner telling her that she shouldn't go outside the chain of command. Her manager then initiated further retaliation and created a hostile environment.

39. The manager's retaliation and hostility severely impacted the Plaintiff causing her to miss work without pay and seek medical attention. As result of her

manager's retaliation, the Plaintiff felt unsafe returning to work at the Macon Call Center.

40. The manager's willful retaliation and hostile conduct has resulted in a constructive discharge of the Plaintiff.

41. The Defendant is vicariously liable for the conduct of Plaintiff's supervisor and thus violated 29 U.S.C. § 215(a)(3)'s anti-retaliation provision.

42. Wherefore, the Plaintiff requests that the Court order the Defendant to (a) pay Plaintiff any lost wages and benefits resulting from the Defendant's unlawful retaliation, (b) liquidated damages in an equal amount, (c) reasonable attorneys' fees and costs, (d) prejudgment interest, (e) compensatory and/or punitive damages to the extent allowed by law and/or (e) all other legal or equitable relief the Court deems appropriate to remedy Defendant's violations of the FLSA.

## JURY DEMAND

The Plaintiff demands a trial by jury on issues and claims subject to such trial.

/s/*Nicolas Stanojevich*
Nicolas Stanojevich
GA Bar No. 173544

Quinn, Connor, Weaver,
Davies & Rouco, LLP
4100 Perimeter Park South
Atlanta GA 30341
404-299-1211
nstanojevich@qcwdr.com

Richard P. Rouco
Quinn, Connor, Weaver
Davies & Rouco, LLP
2 – 20th Street North
Suite 930
Birmingham, AL 35203

Serve Defendants:
**C T Corporation System**
289 S Culver St,
Lawrenceville, GA 30046-4805