IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| AMALIA BENVENUTTI, On Behalf Of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GEICO GENERAL INSURANCE COMPANY d/b/a GEICO, *et al.*,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 5:22-cv-182 (MTT)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Plaintiff Amalia Benvenutti—on behalf of herself and all other current and former Service Representatives at GEICO's Macon, Georgia call center—brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, against Defendants GEICO General Insurance Company and Government Employees Insurance Company (collectively "GEICO").[1]  Doc. 35.  Benvenutti alleges GEICO failed to pay Service Representatives for all hours worked in violation of FLSA, 29 U.S.C. § 207, and that her manager retaliated against her in violation of FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3).  *Id.* ¶¶ 37-52.  To date, six opt-in plaintiffs have joined this action.  Docs. 17; 18; 19; 20; 27; 30.  Benvenutti now moves for conditional

---

[1] The Court granted Benvenutti's unopposed motion to amend on March 28, 2023, which sought to "(1) add Government Employees Insurance Company d/b/a GEICO as a defendant; and (2) narrow the scope of the FLSA collective class definition."  Doc. 34 at 2 (quoting Doc. 28 at 1).  Benvenutti filed her amended complaint the next day, and GEICO General Insurance Company and Government Employees Insurance Company d/b/a GEICO answered on April 12, 2023.  Docs. 35; 38.  The Court refers to both entities collectively as GEICO.

certification of her claims as a collective action pursuant to FLSA, 29 U.S.C. § 216(b). Doc. 29. For the following reasons, that motion (Doc. 29) is **GRANTED**.

## I. BACKGROUND

Benvenutti and other "similarly situated employees" are current and former Service Representatives who worked for GEICO's call center in Macon. Doc. 35 ¶ 15. GEICO's Macon call center employs "hundreds" of Service Representatives, who receive calls from GEICO's customers and assist them "with existing policies, changes to policies, [and] billing issues." *Id.* ¶¶ 15-16. GEICO compensates its Service Representatives on an hourly basis. *Id.* ¶ 20. In March 2020, GEICO implemented a remote work model for its Service Representatives, resulting in changes to its pay and timekeeping policies. *Id.* ¶ 19.

GEICO's Service Representatives "use a software application called 'Finesse' to handle customer calls." *Id.* ¶ 21. Finesse also tracks the time Service Representatives are logged into the application, which GEICO uses to determine the hourly pay of Service Representatives. *Id.* ¶¶ 21-22. In other words, GEICO does not compensate Service Representatives for time that is not captured by Finesse. *Id.* ¶ 22. This uncompensated time includes "a multi-step" login process and the time spent loading work programs and applications, which Benvenutti alleges takes a minimum of "ten to fifteen minutes" and sometimes longer if technical difficulties arise. *Id.* ¶¶ 24-25. In a similar vein, Service Representatives are not paid for tasks once they logout of Finesse at the end of their shift. *Id.* ¶ 26. These tasks include the processes of logging out and shutting down, responding to emails, and entering hours spent on Finesse into a separate time keeping program. *Id.* Outside of the login and logout processes, Service

Representatives are sometimes required to respond to emails during their unpaid lunch break.  *Id.* ¶ 27.

Benvenutti also contends "GEICO has a policy of not paying Service Representatives for … downtime" whenever a technical issue requires a Service Representative to close the application during their shift or a technical issue delays the login process.  *Id.* ¶ 28.  While GEICO provides Service Representatives a fifteen-minute grace period to remedy any technical issues, call downtime outside of that fifteen-minute window is uncompensated.  *Id.* ¶ 29.  For persistent technical issues, GEICO placed Service Representatives in an uncompensated "on-call" status where they were expected to remain available and actively work with GEICO's Information Technology ("IT") department to resolve the problem.  *Id.* ¶ 30.  When Service Representatives experienced downtime, GEICO required Service Representatives to either work past the end of their scheduled shift, have the downtime deducted from their paid leave, or have the downtime treated as unpaid leave.  *Id.* ¶ 31.

In summary, Benvenutti alleges that since March 1, 2020, Service Representatives experienced two to four hours of uncompensated downtime per week. *Id.* ¶¶ 32-33.  Based on these allegations, Benvenutti filed a complaint against GEICO on behalf of herself and others similarly situated on May 11, 2022, and with leave of Court, an amended complaint on March 29, 2023.  Docs. 1; 35.  Of the six opt-in plaintiffs who have joined this action, one claims additional Service Representatives "are interested in joining this action but are fearful of retaliation."  Docs. 17; 18; 19; 20; 27; 30; 33-1 ¶ 15.

Benvenutti now moves for conditional certification of a collective defined as "[a]ll current and former Service Representatives who worked for GEICO and were managed out of the GEICO Macon, Georgia call center at any time since March 1, 2020." Doc. 29 at 1. Benvenutti also requests the Court:

> (1) order GEICO to produce a list of all collective class members, including names, last known mailing addresses, last known email addresses, and last known telephone numbers within fourteen (14) days of the Court's ruling;
>
> (2) approve Plaintiff's proposed Notice of Pending Fair Labor Standards Act Lawsuit ("Notice") (Exhibit 1) and Consent to Become Party Plaintiff ("Consent Form") (Exhibit 2);
>
> (3) authorize Plaintiff to send her proposed Notice and Consent Form to collective class members via U.S. Mail (along with a prepaid return envelope addressed to Plaintiff's counsel) and email; and,
>
> (4) require that Consent Forms to join this action be postmarked or otherwise received by Plaintiff's counsel within 90 days of the date notice is sent.

*Id.* at 2. GEICO argues Benvenutti's motion for conditional certification should be denied, or in the alternative, that the collective claims be limited, and the proposed notice be revised. Doc. 32.

## II. STANDARD

FLSA requires covered employers to pay overtime compensation to non-exempt employees who work more than forty hours in a workweek. 29 U.S.C. § 207(a). Section 216(b) provides these employees a right of action against their employers for violations of Section 207. That action may be brought by employees either individually or in a collective action on behalf of themselves "and other employees similarly situated." 29 U.S.C. § 216(b). In a prospective collective action brought under § 216(b), potential plaintiffs must affirmatively opt into the action by filing their written consent with the court. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th

Cir. 2001). "The decision to create an opt-in class under § 216(b) … remains soundly within the discretion of the district court." *Id.* at 1219.[2]

In the Eleventh Circuit, courts use a two-step approach to certify a collective action under § 216(b).[3] *Id.* At the "notice stage," which is relevant here, the Court determines "whether notice of the action should be given to potential class members." *Id.* at 1218 (citation omitted). In making this determination, the Court must ask whether there are other employees who desire to opt in and whether those employees are similarly situated with respect to their job requirements and pay provisions. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (citing *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)). The plaintiffs bear the burden of demonstrating a reasonable basis for the claim that there are other similarly situated employees who desire to opt into the litigation. *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983). Because the Court usually relies only on the pleadings and any affidavits submitted by the parties, "a fairly lenient standard" is applied, which "typically results in conditional certification of a representative class." *Hipp*, 252 F.3d at 1218 (internal quotation marks and citation omitted). If the class is conditionally certified, "putative class members are given notice and the opportunity" to opt into the action, and "[t]he action proceeds as a representative action throughout discovery." *Id.*

---

[2] While "*Hipp* involved a collective action … under the Age Discrimination and Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, that statute incorporates FLSA's collective action" provision. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 n.37 (11th Cir. 2008) (quotation marks and citations omitted). Thus, *Hipp* "applies in both contexts." *Id.*

[3] But as the Eleventh Circuit in *Mickles v. Country Club Inc.* emphasized, this approach is merely a suggestion for district courts "to better manage § 216 cases." 887 F.3d 1270, 1276 (11th Cir. 2018) (quotation marks and citation omitted). Nonetheless, the Court finds the suggested approach appropriate to apply here.

The second stage of the certification process "is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Id.* Because at this stage the court has a more extensive and detailed factual record, the standard to show substantial similarity "is less lenient, and the plaintiff bears a heavier burden." *Morgan*, 551 F.3d at 1261 (citations omitted). If the Court determines at the second stage that the class representatives (original plaintiffs) and the opt-in plaintiffs are similarly situated, the collective action proceeds to trial on the merits. *Hipp*, 252 F.3d at 1218 (quotation marks and citation omitted). If they are not similarly situated, generally the collective action becomes decertified, the opt-in plaintiffs are dismissed without prejudice, and the original plaintiffs proceed to trial on their individual claims. *Id.*

### III. DISCUSSION

GEICO argues conditional certification is inappropriate because (1) "[l]ogging in and out are excluded from hours worked"; (2) "[l]ogging in and out are excluded from hours worked when performed at home"; (3) that "[e]ven if the login time in question is compensable, whether it results in overtime requires individualized determinations"; and (4) "[w]hether downtime resulted in overtime requires individualized determinations." Doc. 32 at 6-13. But those arguments, which attack the merits of Benvenutti's claims, are generally inappropriate to consider at the "fairly lenient" notice stage of a FLSA collective action. *See Hipp*, 252 F.3d at 1218; *see also Pares v. Kendall Lakes Auto., LLC*, 2013 WL 3279803, at *4 (S.D. Fla. June 27, 2013) ("It is not the Court's role to resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations at the preliminary certification stage of an FLSA collective

action."). Certainly, on the available record, the Court cannot decide the largely fact sensitive issues on which GEICO's arguments rely. Accordingly, in deciding whether to grant conditional certification, the Court will only address whether there are other employees who desire to opt in and whether those employees are similarly situated. *Morgan*, 551 F.3d at 1258.

**A. Interested Employees**

"There is no bright-line rule for how many non-named employees need to express interest, but 'examples of cases where a small number of opt-in plaintiffs satisfied the threshold of interest required for a collective action are numerous.'" *Sizemore v. Grayhawk Homes Inc.*, 2018 WL 1997539, at *2 (M.D. Ga. Apr. 27, 2018) (quoting *Kubiak v. S.W. Cowboy, Inc.*, 2014 WL 2625181, at *8 (M.D. Fla. June 12, 2014)). So far, six Service Representatives have filed consents to join this action. Docs. 17; 18; 19; 20; 27; 30. And of those six opt-in plaintiffs, one claims there are "at least five other Service Representatives who are current employees of GEICO and who are interested in joining this action." Doc. 33-1 ¶ 15. The Court is satisfied that Benvenutti has carried her light burden of establishing that there are other employees who may potentially desire to join this litigation. *See Albert v. HGS Colibrium*, 2017 WL 1682528, at 3 (N.D. Ga. May 3, 2007) (finding that because two individuals had opted into the litigation, "[t]his shows that former employees seek to be members of a collective action, and the desire to opt-in criteria is met").

**B. Similarly Situated Employees**

"For purposes of conditional certification, plaintiffs may show either (1) that their job positions and duties are similar to those positions held by the putative class

members … or (2) that plaintiffs and the putative class members were all subject to the same unified policy, plan, or scheme that forms the basis of the alleged FLSA violation[s]." *Eyo v. Ace High Marketing, LLC*, 2020 WL 8224928, at *4 (N.D. Ga. Nov. 23, 2020) (citing *Hipp*, 252 F.3d at 1217; *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996); *Morgan*, 551 F.3d at 1262-64). Benvenutti proposes a narrow class, consisting only of "current and former Service Representatives who worked for GEICO and were managed out of the GEICO Macon, Georgia call center at any time since March 1, 2020." Doc. 29 at 1. Benvenutti has supported the existence of the class with the declarations of five opt-in plaintiffs. Docs. 29-4; 29-5; 29-6; 29-7; 33-1. In those declarations, the opt-in plaintiffs all say they were employed by GEICO as Service Representatives, and like Benvenutti, they often worked more than forty hours a week but were not compensated at a rate of time-and-a-half because of GEICO's reliance on the Finesse software application to record hours worked. *See* Docs. 29-4 ¶¶ 3, 17-18; 29-5 ¶¶ 3, 7, 9, 17; 29-6 ¶¶ 3, 7, 15; 29-7 ¶¶ 3, 7, 16; 33-1 ¶¶ 3, 6, 13. Benvenutti has satisfied this prong of the conditional certification analysis. *Eyo*, 2020 WL 8224928, at *4. And again, GEICO's arguments to the contrary are either not appropriate to address at the notice stage or cannot be resolved on the available record, or both. *See Sizemore*, 2018 WL 1997539, at *2 (Rejecting defendants' argument that construction superintendents and assistant superintendents were exempt positions under FLSA because "[t]hese arguments go to the merits of Plaintiffs' FLSA claims, not to whether the potential plaintiffs are similarly situated.").

**C. Contact Information, Notice, and Scheduling**

Benvenutti attached her proposed notice and consent form to her motion for conditional certification. Docs. 29-1; 29-2. While GEICO only takes issue with the proposed notice, its objections are both perfunctory and misplaced. GEICO argues that the Court should "remove the … official court ordered notice [language], the caption, and other language suggesting that the notice comes from the Court." Doc. 32 at 13. Such language, GEICO contends, "makes it appear that the Court is actually ordering the notice, as opposed to merely approving a notice from counsel." *Id.* at 14. In other words, GEICO is concerned that it may appear that the Court is endorsing the merits of Benvenutti's claim. But the proposed notice makes clear that the Court does no such thing. The introductory paragraph on the proposed notice's first page states:

> Although the U.S. District Court for the Middle District of Georgia has authorized this Notice, the Court has taken no position regarding the merits of Plaintiff's claims or GEICO's defenses.

Doc. 29-1 at 2. At the end of the "description of the lawsuit" paragraph on the second page, the proposed notice states:

> GEICO denies the allegations in this lawsuit and has asserted various defenses. The Court has not ruled on the merits of the claims asserted in this lawsuit or on defenses raised by GEICO.

*Id.* at 3. Finally, the proposed notice concludes with a clear and conspicuous disclaimer, centered, in bold font, that states:

> THIS NOTICE AND ITS CONTENT HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA. THE COURT HAS TAKEN NO POSITION REGARDING THE MERITS, IF ANY, OF THE PLAINTIFF'S CLAIMS OR OF GEICO'S DEFENSES.

*Id.* at 4 (parenthetical). The Court sees no realistic possibility that putative opt-in plaintiffs could be confused.

## IV. CONCLUSION

For the reasons stated, Benvenutti's motion for conditional certification (Doc. 29) is **GRANTED**. Accordingly:

1. The Court **CONDITIONALLY CERTIFIES** this case as a collective action and authorizes Plaintiff to send notice, in accordance with this Order, to the following individuals:

> All current and former Service Representatives who worked for GEICO and were managed out of the GEICO Macon, Georgia call center at any time since March 1, 2020.

2. Within fourteen (14) days of the entry of this Order, Defendants Government Employees Insurance Company d/b/a GEICO and GEICO General Insurance Company d/b/a GEICO (collectively "GEICO") **SHALL** provide counsel for Plaintiff with the names, last known mailing addresses, last known email addresses, and last known telephone numbers of all individuals identified in Paragraph 1.

3. The Notice and Consent Form, attached to Plaintiff's Motion as Exhibits 1 and 2, respectively, are hereby **AUTHORIZED** for distribution to all individuals identified in Paragraph 1.

4. Plaintiff's counsel, or a third-party designated by Plaintiff's Counsel, **SHALL** distribute, via U.S. Mail and email, the Court-authorized Notice and Consent Form to the individuals identified in Paragraph 1. Each Notice sent by U.S. Mail **SHALL** be accompanied by a prepaid, pre-addressed return envelope. No other material shall accompany the Notice. Plaintiff's Counsel **SHALL** use their best efforts to mail and

email all Notices on the same day so as to establish a single date of mailing. Plaintiff's counsel **SHALL** bear all costs associated with distributing the Notice and accompanying material in this manner but shall be entitled to petition the Court for a recovery of such costs.

5. No later than seven (7) days after the Notice has been sent via U.S. Mail and email, counsel for Plaintiff **SHALL** file with the Court a notice certifying that the Notice has been sent consistent with this Order and identifying the date of mailing.

6. Plaintiff's counsel **SHALL** promptly file all returned Consent Forms upon receipt. All Consent Forms shall be postmarked, faxed, emailed, or otherwise received by Plaintiff's counsel no later than ninety (90) days from the date of mailing in order to be deemed timely.

**SO ORDERED**, this 26th day of April, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT